UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

-against-

EDWARD MORRIS WEAVER, a/k/a Ned,
LAWRENCE A. KAPLAN, SCOTT M. DOUMAS,
MARK BENOWITZ, RICHARD R. GOLDBERG,
RICHARD LINICK, PAUL E. RAIA, HOWARD S.
STRAUSS, and WALLACE W. DIRENZO, a/k/a Wally,
JAMES P. ELLIS, a/k/a Max Braddock, a/k/a Patrick
Cosgrove, a/k/a Todd Parker,

                    Defendants.
----------------------------------------------------------------X

<u>ORDER</u>
13-CR-120 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★   JAN 1 0 2014   ★
LONG ISLAND OFFICE

FEUERSTEIN, J.:

The twelve (12) count superseding indictment, filed May 1, 2013 ("Indictment"), charges defendants with various crimes in connection with their activities at Vendstar, a company that sold vending machine business opportunities. [Docket Entry No. 39]. The charges include conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, and substantive mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

Now before the Court is a motion which seeks to strike certain portions of the Indictment (hereinafter "Motion to Strike").[1] Mot. to Strike at 2-13. For the reasons that follow, the Motion to Strike is denied.

I.      Background

The Indictment includes twelve (12) counts, charging defendants with various crimes in connection with their activities at Vendstar. Count One charges defendants with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. Indictment at 24-30. Counts Two

---

[1]     Defendants Benowitz, Kaplan, Doumas, Goldberg, and Strauss filed the Motion to Strike. [Docket Entry No. 88]. Defendant Weaver has joined the Motion to Strike. [Docket Entry Nos. 94, 113].

1

through Ten charge certain defendants with substantive mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. *Id.* at 30-33. Defendants Benowitz, Kaplan, Doumas, Goldberg, and Strauss are all charged with at least one (1) count of substantive fraud. Counts Eleven and Twelve charge Weaver and Kaplan, respectively, with making a false statement in violation of 18 U.S.C. § 1001. *Id.* at 33-35. Each count of the Indictment incorporates the allegations contained in paragraphs one (1) through fifty-nine (59), including the general description of the fraudulent scheme and its victims in paragraphs eight (8) through fifty-nine (59) ("¶¶ 8-59").

According to the Indictment, "[b]etween May 2005 and July 2010, more than 7,000 individuals paid over $60 million to Vendstar." *Id.* ¶ 26. The Indictment charges that "[i]n order to fraudulently induce others to purchase the business opportunities," defendants "and their co-conspirators made, and caused others to make, materially false and fraudulent statements." *Id.* at 14. The Indictment lists seven (7) such statements under the heading "Materially False Statements."[2] Indictment at 14.

The Indictment also charges that defendants "omitted and concealed, and caused others to omit and conceal, material facts." *Id.* at 15-16. The Indictment lists ten (10) such material facts under the heading "Omission/Concealment of Material Facts."[3] Indictment at 15-16.

---

[2] Defendants seek to strike the following five (5) statements from the Materially False Statements section of the Indictment: (a) "Customers who purchased the business opportunity would earn substantial profits;" (b) "Customers' vending machines would sell their entire stock of candy three to four times per year;" (c) "Customers would earn back their investment in one year or less;" (d) "One or more Vendstar sales representatives personally owned and operated a highly profitable vending machine route;" and (e) "The locating company Vendstar recommended would secure – and, in some cases, already had secured – high traffic locations for the prospective customer's vending machines." Indictment at 14; Mot. to Strike at 2.

[3] Defendants seek to strike all ten (10) statements from the Omission/Concealment of Material Facts section of the Indictment, including: (l) "The candy Vendstar shipped to customers was often stale and rotten;" (m) "The individual locators used by the locating companies recommended by Vendstar discouraged customers from accompanying them while they placed the vending machines and tried to avoid having customers see the locations until after the locator had been paid and left the area;" (n) "Vendstar received numerous complaints from previous customers who said the recommended locating

2

II. Discussion

Although Rule 7(d) of the Federal Rules of Criminal Procedure permits a district court to delete extraneous material from an indictment, a motion to strike surplusage from an indictment should not be granted unless "the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (emphasis added) (quoting *United States v. Scarpa*, 913 F.2d 933, 1013 (2d Cir. 1990)); *see also United States v. Hernandez*, 85 F.3d 1023, 1020 (2d Cir. 1996). Thus, even language deemed prejudicial may not be stricken "if evidence of the allegation is admissible and relevant to the charge." *Scarpa*, 913 F.2d at 1013; *United States v. Mahaffy*, 466 F. Supp. 2d 115, 118 (E.D.N.Y. 2006); *United States v. Rivera*, No. 09-CR-619, 2010 WL 1438787, at *5 (E.D.N.Y. Apr. 7, 2010). "Given this exacting standard, such motions [to strike] are rarely granted." *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005).

A. Materially False Statements

Defendants seek to strike five (5) of the seven (7) allegedly material false statements included in the Indictment because they are "forward-looking statements," which "may not

---

company's individual locators dumped vending machines anywhere, including in businesses that already had other Vendstar vending machines and businesses that had few customers;" (o) "Vendstar received numerous complaints from previous customers about the lack of profitability of the vending machine business;" (p) "Certain locating companies recommended by Vendstar regularly changed their names to create the appearance of having a clean record and to avoid association with past complaints;" (q) "The operators of certain locating companies recommended by Vendstar regularly used aliases to avoid association with previous complaints;" (r) "Vendstar continued to recommend that customers use locating companies operated by the defendant [Ellis] after FBI agents interviewed Vendstar employees in 2009 as part of an investigation into [Ellis'] locating practices; (s) "Locating companies that claimed to have already secured locations in a prospective customer's area had not already secured locations;" (t) "Locating companies that claimed to offer various warranties rarely if ever honored the purported warranties;" and (u) "The disclosure statement Vendstar was required by law to send to prospective customers did not in fact include a front page that contained warnings about purchasing the business opportunity." Indictment at 16-17; Mot. to Strike at 3.

3

support a charge of fraud."[4] Mot. to Strike at 4. However, the law is clear that statements or promises of future results can be the basis for mail and wire fraud. *See United States v. Amrep. Corp.*, 560 F.2d 539, 543 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978) (noting that in a prosecution for mail and wire fraud, "[d]eclarations of opinions as to future events which the declarant does not in fact hold may be found by a jury to be fraudulent"); *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995) (quoting *Durland v. United States*, 161 U.S. 306, 313, 16 S.Ct 508, 40 L.Ed. 709 (1986)) ("scheme or artifice to defraud" "includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future").

The statements alleged in the Indictment are relevant and admissible to prove that defendants knowingly misrepresented the potential success of the vending machine venture in order to fraudulently induce consumers to purchase the business opportunities from Vendstar. Defendants argue that "at worst," the statements amount to "puffery" of a "wholly aspirational nature" that "no reasonable person could have believed [] to be true." Mot. to Strike at 5, 7. However, mischaracterization of the potential profits of an investment opportunity may amount to more than puffery and support a charge of fraud. *See, e.g., United States v. New S. Farm & Home Co.*, 241 U.S. 64, 71, 36 S.Ct. 505 (1916) (holding defendants' statements regarding value of land for sale "transcends the limits of 'puffing'" into "false pretenses"); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970) (noting representations "may go beyond mere puffing and enter the realm of fraud where the product must inherently fail to do

---

[4] To support this argument, defendants rely on cases involving claims brought under the civil securities statute, which explicitly provides a safe harbor for "forward-looking statements." *See* 15 U.S.C. § 78u-5(i)(1). Those cases are inapplicable here. Defendants are charged with violating the mail and wire fraud statutes, which criminalize use of the mails or wires in the execution of "any scheme or artifice to defraud," and do not contain a similar safe harbor for "forward-looking statements." *See* 18 U.S.C. §§ 1341, 1343.

4

what is claimed for it"); *United States v. Armantrout*, 411 F.2d 60, 64 (2d Cir. 1969) (affirming conviction of mail fraud where defendant "misrepresented to customers that they could" achieve the desired result of their investment "quickly and easily").

Furthermore, whether a defendant's statements amount to fraud or puffery is to be decided by a jury, and not by the Court on a motion to strike. *See, e.g., United States v. Guadagna*, 183 F.3d 122, 130-32 (2d Cir. 1999) (holding that district court impermissibly replaced its judgment for that of the jury to decide whether defendant's conduct amounted to fraud or puffery); *Armantrout*, 411 F.2d at 66 ("Naturally, [defendants] will always disclaim fraudulent intent. Therefore, it must be the exclusive function of the jury to form its own conclusions after examining and appraising the evidence."); *Amrep*, 560 F.2d at 544 ("Whether [defendants'] representations . . . were made in good faith was a question for the jury.").

Defendants argue that various disclaimers they sent to consumers "alerted all prospective purchasers to the forward-looking, wholly aspirational nature of the enumerated proffered sales statements and precluded reasonable reliance thereon." Mot. to Strike at 7. However, these disclaimers do not permit knowing misrepresentations of profit projections. *See United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000) (upholding mail and wire fraud convictions where defendants represented that profit projections, which were accompanied by disclaimers, were "good" and "credible," even though defendants knew projections were unrealistic); *United States v. Leonard*, 350 F. App'x 480, 482 (2d Cir. 2009) ("[T]his kind of disclaimer cannot alone salvage an otherwise fraudulent material statement.").

Because the allegedly material false statements are admissible and relevant to prove that defendants knowingly misrepresented the potential profits of the business opportunities in order

to defraud consumers, defendants' motion to strike these statements is denied. *Scarpa*, 913 F.2d at 1013.

B.  Omission/Concealment of Material Facts

Defendants seek to strike all ten (10) of the allegedly omitted or concealed material facts included in the Indictment because "omissions – absent a duty to disclose – may not support a finding of fraud." Mot. to Strike at 9. Defendants argue they did not have a duty to disclose because the "relationship between defendant-salespersons and prospective purchasers did not involve a recognized fiduciary relationship." *Id.* However, the Second Circuit has expressly rejected this argument, noting that that while "an omission can violate the fraud statute only in the context of a duty to disclose," "a *fiduciary* duty is not the *sine qua non* of fraudulent omissions." *Autuori*, 212 F.3d at 118 (citation omitted). "[A] duty to disclose can arise from circumstances other than a fiduciary relationship," such as "where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading." *Id.*; *see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995). Thus, the absence of a fiduciary duty does not preclude a finding of a duty to disclose on behalf of defendants. Accordingly, because the allegedly concealed facts are admissible and relevant to the crimes charged, defendants' motion to strike these statements is denied. *Scarpa*, 913 F.2d at 1013.

C.  Paragraphs Eight through Fifty-nine of the Indictment

Defendants seek to strike ¶¶ 8-59 of the Indictment because "defendants will be unfairly prejudiced by the excess verbiage within [¶¶ 8-59], much of which posits theories of prosecution that in fact cannot support conviction." Mot. to Strike at 11. Although defendants label ¶¶ 8-59 as "non-essential," these paragraphs constitute the entire description of the fraudulent scheme

contained in the Indictment. *Id.* Defendants readily acknowledge that "a court generally will not strike portions of an indictment that allege facts that the government will be permitted to prove at trial." *Id.* at 12. Defendants have not shown that ¶¶ 8-59 are irrelevant, inflammatory, prejudicial, or inadmissible. Accordingly, defendants' motion to strike ¶¶ 8-59 is denied. *Mulder*, 273 F.3d at 99; *Scarpa*, 913 F.2d at 1013.

Alternatively, defendants argue that ¶¶ 8-59 "should not be recited to the jury and should be omitted from any copy of the Indictment that the jury is permitted to review." Mot. to Strike at 12. Defendants contend that "no legitimate reason exists to permit the government to recite such facts to the jury in the context of reading the Indictment in open court, or to include them in any copy of the Indictment that is submitted to the jury." *Id.* However, it is within the sound discretion of the Court to permit "the jury to take a copy of the indictment into the jury room," so long as the jury is instructed that the indictment is not to be considered evidence. *United States v. Esso*, 684 F.3d 347, 350 (2d Cir. 2012); *see also United States v. Press*, 336 F.2d 1003, 1016 (2d Cir. 1964); *United States v. Shellef*, 732 F. Supp. 2d 42, 82 (E.D.N.Y. Aug. 5, 2010). Accordingly, defendants' request to omit ¶¶ 8-59 from any version of the Indictment shown or read to the jury is denied.

Defendants also move to strike the reference to the number of victims contained in paragraph twenty-six (26) of the Indictment. Mot. to Strike at 12-13. In support of this request, defendants cite to a single case from outside this district in which the court granted an unopposed motion to strike. *Id.* (citing *United States v. Zabawa*, 29 F.3d 279 (10th Cir. 1994)). Defendants do not argue that the number of victims is irrelevant or inflammatory. Indeed, this information is relevant to the scope of the fraudulent scheme of the alleged fraud. *See, e.g., United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) (citing *Schmuck v. United States*, 489 U.S. 705, 711

7

(1989)) (noting in a wire fraud case, court must "consider[] the scope of [the] fraudulent scheme") (alterations in original). Accordingly, defendants' motion to strike the number of victims is denied.

III. Conclusion

For the foregoing reasons, defendants' Motion to Strike is denied.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: January 10, 2014
      Central Islip, New York